Good morning. My name is Glenn Jonas. I'm the attorney for the appellant David Phillips. I'd ask for two minutes reserved for rebuttal. Okay. Watch your clock. I will. Thank you. An issue in this appeal is the fundamental right to present a complete defense, the right to not have your right to testify infringed, and then there's the pecuniary gain insufficiency of the element. I'd like to start off by addressing the first two issues, if I may. The crucial evidence in this case was a courtyard confrontation between David Phillips and David Sulianoa. Mr. Sulianoa is the co-conspirator, and he's confronting Mr. Phillips with the reality that he accomplished a murder on behalf of Mr. Phillips. The jury, the trier of fact, is going to examine the words, the conduct, the facial expressions, to make an assessment as to whether or not that shows guilt on the part of Mr. Phillips. As this court well knows, words alone are not enough. And so the context behind those words and that conduct was highly relevant, highly probative. At issue is that he has a physical condition, end-stage kidney disease. That affects his ability to understand. He's fatigued. He's tired. But more importantly, he has a catheter above his forearm. If it's displaced, he'll bleed to death rapidly. These medical and physical facts are not in dispute. We litigated in New Orleans. The case was transferred to California specifically because of his medical condition. The only basis for exclusion argued by the government was sympathy. If you turn to page 1282 of Heischer, not now but later, what you'll recognize is that probative evidence that incidentally happens to make a criminal defendant more sympathetic is not properly subject to exclusion under Rule 403. So from the get-go, we have... Part of the argument was the fistula or catheter that was in his arm. He was worried about displacing that if he had any kind of a physical encounter with Mr. S. What might have prompted a physical encounter? Why would he have reacted physically and begun beating on a 275-pound former bouncer after he'd just heard that his friend had been killed? It's the reverse. He's afraid that Mr. Suenoa is going to attack him. Suenoa weighs 275 pounds. And why would he be afraid of that? In the prior pretext phone call, which is in front of the court, he had stated that he had knocked a patron unconscious. This is a violent man who's informing my client that a murder has occurred. At that point, the jury expects my client to say something to the effect of, what are you talking about? I didn't ask you to do that. Are you crazy? But Mr. Phillips can't risk to contradict him. He can't risk a confrontation because something as simple as a grab or a shove or a punch could lead to displacement of that catheter. He'll bleed out. He'll be dead. And so the trier of fact had a right to know, and he had a right to present, that the reason I didn't confront Mr. Suenoa wasn't because I was guilty. It was because I carry a fatal risk. This wasn't as simple as I was scared I was going to get my butt kicked. I didn't want to die. How were you planning on introducing that evidence? Through the defendant himself. But did he end up testifying? He did not end up testifying because he was told that if he were to testify, and this is in the transcript, the Rule 29 motion, I re-raised the issue, that if he testified and he's cross-examined on these issues, he cannot answer with the medical and physical truth. Now, that's not a right to testify. That's an infringement. For the right to be meaningful, the defendant must have the opportunity to address the crucial evidence against him. In any case where the government has sole control and custody over the context of the evidence, it's going to get reversed. If the court felt that sympathy, which is not a proper basis for exclusion, but let's pretend it was, there are a number of solutions. One is, hey, government, if you don't want sympathy, don't put it into evidence because the defendant is conceding that the only relevance is to this courtyard confrontation. Number two, we can give a… Don't put what into evidence? Don't put the courtyard confrontation? The evidence of it, what transpired, the dialogue and the videotape. Well, wasn't that a key part of their case? Exactly. So… So it has to come in, right? Right. So once it comes in, we have a right to respond to it because what the court is saying is that was important evidence and you can't block the defendant from rebutting important evidence. The jury had the right to assess the weight of the import of the fact that he has this catheter and his fear and how it controlled his responses and reactions. So, counsel, there was some discussion in the record about sanitizing this. Correct. Is there anything in the record that actually says what… Because you offered to sanitize it in some way. Is there anything in the records to say what the offer was in terms of sanitization, if I can use that word? Well, it was left to the court to decide how to sanitize it. Obviously, the easiest way is to not use the term end-stage kidney disease. Simply say that the defendant suffers from a medical condition that causes fatigue. Or maybe what the point was you wanted to put in was about the catheter because if that ruptured, if there was a physical confrontation… Both points are important. But you didn't have to use… So it could have been narrowed down, and that was argued, that it could be narrowed down as low as to just the catheter. I would feel that was still not fair to the defendant, but at least we don't have an all or nothing. The court approached it as an all or nothing proposition, and it wasn't. When the court is faced with a potential violation of a right to defend yourself, you want to proceed with caution. And I would just tell you directly… Counsel, I just want to make sure. I'm still sort of looking for an answer to Judge Owen's question. So I know that there was some back and forth, and there was some compromise on your part, and the district court was a little unsure as to how I was going to work through this. But even if you couldn't bring medical evidence to talk about the catheter, you certainly could have talked about the question of fatigue and the brain fog, but you chose not to put your client on the stand, even to testify as to those things. The fact that he says he's tired doesn't help us. It's the basis for why he's tired that gives credibility to it. Anybody can claim they were tired. Anybody could say, hey, I didn't sleep last night, so my argument here isn't as good as it would otherwise be, as opposed to I had chemotherapy this morning. There's a difference. There's a qualitative difference between the evidence. We were prevented from using the evidence that supported the claim. Let's not confuse the claim for the evidence that supports it. Right, but you didn't even put on your client to give the evidence about the fatigue and brain fog at all. It's already in evidence through the tape. He's saying in the tape, I'm tired, I'm brain dead, I'm confused. That's already in evidence. So me putting him on the stand to then not be able to further corroborate it just hurts my defense. So suppose we agree with you that it was error to not admit some sort of evidence as to this. Was it the government argues that it wasn't prejudicial to your client? What's your response? My response is that under Rule 403, for it to be properly excluded, it has to be of scant value. This is probative value that impacted his ability to explain the most important piece of evidence. To say that we can say beyond a reasonable doubt that that was harmless error would be intellectually dishonest. It would be ignoring all the facts. I have a minute and 30 seconds left. You didn't address the question of first impression in this case, which is whether the unenforceable loan is something of pecuniary value. Right. Can I do that on rebuttal? Yes, you can do it on rebuttal if you want. Thank you. Thank you. Time goes fast. May I proceed, Your Honor? Thank you. Good morning and may it please the Court, Kevin Boyden for the government. Your Honor, this Court can affirm as to the conviction on two bases, one finding no abuse of discretion and one finding that even if there was error, that the error was harmless. And, Judge Wardlaw, I'll start off with that. That was a question you asked. I'm not going to downplay the importance of the confrontation video. It is a key piece of evidence, but I think it's important to understand it's not the only piece of evidence that was in this trial, and it's not the only piece of evidence that the jury heard. For example, the jury heard the history of the bad business relationship between the defendant, David Phillips, and the victim, Stephen Fruchter. They heard about the partnership going sour. They heard about the accusations of stealing clients and business. And they saw a series of messages between the two, including the very contentious messages from Mr. Phillips to Mr. Fruchter, one of the last ones which said, don't push me, man, it's really not worth it. They also heard the testimony of David Suenoa. They saw him on the stand. Mr. Suenoa was thoroughly crossed. His violent past came out. They heard about that. They heard about that. I know they heard all that, but I'm really maybe just totally off base, and maybe there's other pieces of evidence, but I'm skeptical. I mean, how did just creating a competing business end up being a reason to kill someone? That doesn't seem like much of an escalation, even in those e-mails. Sure, Your Honor, just to give a little background on it, Mr. Phillips and Mr. Fruchter were initially business partners, and there became a competing question about a software program that Mr. Fruchter developed. Mr. Phillips thought their company still had rights over it. It became contentious. Mr. Fruchter eventually leaves the business and develops another business on his own, and then there's the accusations going back and forth of taking clients in business. So I'm summarizing it briefly, but that's kind of the basis for it, that this partnership just went south and got very echoey. Ordinarily, that doesn't result in somebody getting murdered. It results in somebody being sued. I agree. So as a juror, I'd be skeptical about this unless the evidence was really strong. I understand that, and that's where some of the other evidence that came in, Your Honor. First of all, the testimony of David Sueno himself, the person who Mr. Phillips approached to carry out this murder for hire. They had the chance to hear that directly from Suenoa, and that was with hearing all of the impeachments, all of the violent history of his past, all of the criminals. So this was something the jury got to see. Mr. Suenoa's testimony was corroborated by recorded phone calls that he had made with an informant. Pablo Rodriguez was the name that was used. And the jury got to hear that. The jury also heard the story from Mr. Suenoa that's saying Mr. Phillips, well, first of all, Mr. Phillips had loaned him money for a marijuana venture, and when Mr. Suenoa lost that money, he had a debt. He had to pay it back. Mr. Suenoa told the jury, Mr. Phillips said, I didn't have to pay it back if I took out someone, took out Fruchter. And Mr. Suenoa explained that that meant murder. They also heard evidence that Mr. Phillips had given a picture of the victim to Mr. Suenoa. And also, they also heard things later on in the investigation, and one of them, Judge Bidey, I believe you had asked about Mr. Phillips meeting this man and what was the threat. Opposing counsel mentioned that in a setup call before the meeting, Mr. Suenoa had mentioned that he had been fired as a bouncer for beating someone else, beating someone up. Yet after hearing that, Mr. Phillips still met with Mr. Suenoa, and the jury heard that. The jury also heard about the events of the search of Mr. Phillips' office after it, where they found a shredded photo of the photo that Mr. Suenoa had given him at the meeting. And they also heard the statement that Mr. Phillips had given to police. And in that statement, which was just police around, Mr. Phillips never said he couldn't understand Mr. Suenoa. He didn't say Mr. Suenoa just told me he killed someone. He never expressed any fear of Mr. Suenoa. To the contrary, what the jury heard in that conversation was that Mr. Suenoa, that Mr. Phillips said Mr. Suenoa was always a good guy, nice guy to me. So while the evidence of the video confrontation is important, it's not the only thing from which the jury could deduce and reasonably infer that Mr. Phillips was guilty. And so the exclusion of this evidence, if error, is harmless at best. But in any event, the district court did not abuse its discretion. This was not a rash decision that the district court made. The district court had the chance to look at this evidence in three different lenses at three different times. First, in the pretrial motion in limine before any evidence was offered. Then at the trial, as the government was closing its evidence, it had the chance to assess it as the evidence was developing. And then on the Rule 33 motion for new trial, with perfect 20-20 hindsight, to see if there was any error, to see if this evidence would have mattered, all three times the judge came to the same decision, that this evidence, any probative value, was substantially outweighed by a fear of sympathy. Not just making a defendant sympathetic, but that it was substantially outweighed in probative value. The fact that he did it three times does not suggest a rash decision. It's just a very reasoned course, suggesting he did not abuse his discretion. As to the pecuniary gain argument, Your Honor, first of all, taking the evidence in the light most favorable to the verdict, Mr. Suonoa made it clear to the jury, David Phillips offered to forgive him the loan, the debt he owed, in exchange for the hit. This is not the Frampton case, where there was an unspecified promise of something in the future that might happen. This was not the Chong case, where there was no agreement showing an understanding between the solicitor and the hitman. It's not any of the cases that that came up on. If you look at the cases that the district court relied on, the 11th Circuit case in Hernandez and the 5th Circuit case in McCulloch, talking about what consideration means. It's not a business term. It's not UCC code. It's not a commercial action. The very ordinary term is in return for something. Here, forgive the loan in return for the hit. That meant something to Mr. Suonoa. He had a debt to pay. Now he didn't have to pay it anymore. And it's a quid pro quo, or the promise of, and it's in return for that. And for those reasons, the pecuniary gain should be satisfied and the offer to forgive this debt in exchange for the murder should suffice under 1958. Was there any evidence as to whether Suonoa knew Fuchter or knew who he was before his encounter with Phillips about the loan? My understanding of the record is no, Your Honor. In fact, several calls, I believe, from Mr. Suonoa to, I might be wrong on that, but I believe at one point Mr. Suonoa said he did not know the victim. Before that, he got the victim's photo from Mr. Phillips. And my memory of the record is that's the first time he knows him. Based on that, Your Honor, in everything, we believe the pecuniary gain element is settled. We do not believe there's an abuse of discretion, but even if there were in light of all the other pieces of evidence the jury heard, any error was harmless. Unless there are other further questions, I'll submit on my brief, and we would request the Court affirm the conviction. Thank you, Your Honor. Thank you, Counsel. Just quickly, if you were to look at page 45 of the court order denying, of the extraditive record, denying or granting the government motion, it is filled with errors. It applies the wrong standard. It says that the probative value is substantially outweighed by prejudice. That's not the standard. It's unfair prejudice, and there's a big difference between the two. It doesn't address the Heischer ruling or anything akin to that. It draws down on a district court case from New York with inapplicable facts, and it doesn't mention the catheter. Even in the order after trial, it restates the wrong standard. So great deference can't be shown when the correct standard wasn't applied. As to pecuniary gain, the statute is clear. It must have something of an economic value, anything, but it has to have an economic value. And forgiving $30,000 in debt is not? No, because the money was paid in July, and it was gone before any agreement to murder was entered into. So by that point, Selena tells Phillips, I screwed up, the money's gone, and Phillips says, okay, murder somebody. There isn't an actual debt, and there is no payment. If the money hadn't gone, then there wouldn't be any need to forgive $30,000, right, if you still had the $30,000? No, he squandered it. It's gone. That's right. That's why he needed loan forgiveness. Well, loan forgiveness is a civil term that doesn't apply between criminals. What it is is I screwed you. Why not? Because they weren't criminals at the time. They're criminals under the evidence that we're looking at right now. And what he's saying is I screwed you, and Phillips is saying, great, do this murder for me. Does he have something he can sell? No. Does he have a debt that he can transfer? No. Does he have a, let's say, saleable level of drugs or gun or money or a check or something he can put in a safe? No. He has nothing of economic value. He's a deadbeat who never paid anybody back, and nobody's pretending that he would. And when he was asked by the government at page 73, day 5 of trial testimony, why he did the murder, why he agreed to it, his answer was to preserve the business relationship with David Phillips. It wasn't because it saved me money. So the facts do not support that element. It's not there. Well, to preserve a business relationship, there would have been no business relationship if he didn't pay back the money or do something in return, right? That's true. And that meant that there would be some basis for future business dealings between the two. And if the Congress meant to say quid pro quo and only quid pro quo, the court would be right. But what it says is economic value, and it's been interpreted in Frampton to mean something that actually is worth a dollar or can be transferred or sold. If you go back and look at Frampton, that's what it says. And that's an in-circuit case. All right. Thank you, counsel. Thank you. I ask that the conviction be reversed. All right. Thank you. U.S. v. Phillips is submitted.
judges: Wardlaw, Bybee, Owens